UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DMITRY PRONIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15-cv-00183-JMS-DKL |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

**Entry Denying Motion for Summary Judgment**

Plaintiff Dmitry Pronin, an inmate of the Federal Bureau of Prisons ("BOP"), brings this action under the Federal Tort Claims Act ("FTCA") against the United States of America. Pronin alleges that, on June 22, 2013, while he was confined at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), BOP staff negligently failed to protect him from an assault by another prisoner. The United States moves for summary judgment, arguing that Pronin's claims are barred by the discretionary function exception to the FTCA's waiver of sovereign immunity. *See* 28 U.S.C. § 2680(a). The United States further argues that even if Pronin's claims were not barred by this exception, his negligence claim fails as a matter of law. Pronin has responded and the United States has replied. For the following reasons, the United States' motion for summary judgment [dkt 77] is **denied**.

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable

inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. Facts

Based on the standard set forth above, the following statement of facts is presumed to be true for purposes of summary judgment.

*Pronin's Claims*

Pronin was confined at USP Terre Haute from May 22, 2013, to December 4, 2013. He alleges that on June 22, 2013, while he was confined in the F-2 Unit of the USP Terre Haute, he was assaulted by another inmate, Mark Cossette, while BOP officers were in their office drinking tea. He further asserts that Cossette had threatened him two days before the assault. Pronin alleges that he had informed BOP personnel Officer Gary Rogers and Case Manager Bradley Mitchell about the threat and requested to be transferred to another unit or another range on the F-2 Unit, but that he was not moved as he requested.

2

*BOP Procedure Regarding Reported Threats*

There is no mandatory policy, procedure, regulation, or other duty that must be followed in responding to reported threats by inmates. Rather, correctional staff may use their discretion and judgment in responding to reports of potential threats by inmates, considering such factors as safety and security concerns, the nature of the reported threat, and the specificity of the reported threat. If a case manager, correctional officer, or other correctional staff receives a report of a potential threat to an inmate, typically, the Operations Lieutenant is notified, the inmate is placed in the Special Housing Unit ("SHU") and an investigation is initiated to determine the validity of the threat.

At the same time, if an inmate believes that his safety is at risk, he may request protective custody or request to be placed in the SHU. Determinations regarding whether to place or keep inmates in the SHU for administrative detention or disciplinary purposes are within the discretion of the Warden. In evaluating potential safety or disciplinary measures, several factors are considered including, but not limited to, safety and security concerns, economic feasibility, staff allocation, security levels, classification of inmates, disruption of an inmate's participation in rehabilitation or other programs, and the inmate's ability to circulate and socialize within the prison.

*The Threat Against Pronin*

On June 20, 2013, inmate Cossette approached Pronin and told him that he knew that Pronin had previously been assaulted at another prison, but that it was okay because Pronin was a "no-good sex offender." Pronin reported this statement to Rogers and to Mitchell.

On that date, Rogers was a Correctional Officer assigned to the F-2 Unit at USP Terre Haute. If any inmate told Rogers that there was a potential threat against his safety or that he had been threatened by another inmate, Rogers would have called the Lieutenant's Office and informed one of the Lieutenants on duty of the potential threat. Rogers does not recall Pronin ever reporting to him that Pronin was threatened by another inmate or contacting the Lieutenant's Office to report such a threat.

In June of 2013, Bradley Mitchell was a Case Manager in the F-2 Unit at USP Terre Haute. Although Mitchell remembers Pronin, he does not recall Pronin ever stating to him that there was a potential threat to his safety. As a Case Manager, if any inmate told Mitchell that there was a potential threat against his safety, Mitchell would have notified the Lieutenant's Office, informed the Lieutenant and, if needed, escorted the inmate to the Lieutenant's Office for interview and a possible protective custody investigation.

*The Assault on Pronin*

On Saturday, June 22, 2013, Pronin was housed in the F-2 Unit at USP Terre Haute. Senior Officer Chris Wilson was the assigned to the F-2 Unit. The F-2 Unit consists of two tiers of cells and a common area in the middle, where the inmates engage in recreational activities outside of their cells. On June 22, 2013, the F-2 Unit housed approximately 124 inmates. At that time, inmates in the F-2 Unit were released from their cells approximately 15 cells at once to participate in recreational activities within the unit.

The F-2 Unit Officer's Station has a large glass window that looks out onto the common area. The glass window provides a full view of the common area, with minor obstructions from the stairs and pillars, and allows the F-2 officers to remain visible and provide direct supervision

4

to the inmates, even if they are inside of the office. While the inmates are engaged in unit activities outside of their cells, either one of the officers assigned to the unit would conduct random thirty-minute rounds of the unit in accordance with BOP policy and post orders.

At 1:39:13 p.m. on June 22, 2013, Pronin was assaulted by another inmate in the common area of the F-2 Unit. The assault lasted approximately seven seconds.

Senior Officer Wilson does not specifically recall what he was doing at the time of the assault. At approximately 1:50 p.m., Senior Officer Wilson was in the F-2 Unit office with another officer with the door open. Pronin walked into the office in F-2, and Officer Wilson noticed Pronin's lip was bleeding and he had blood on his white t-shirt. Pronin reported that he was assaulted by another inmate. Officer Wilson notified control, medical, and the Lieutenant via telephone. The F-2 inmates who were out in the common area for recreation were locked down, and upper body checks were conducted. Pronin's injuries were assessed by medical. Both inmates involved in the assault were escorted to the Lieutenant's Office. Subsequently, both inmates involved were placed in the SHU. Pronin was administratively placed in the SHU pending a SIS investigation into the assault.

*BOP Post Orders*

The United States has filed a redacted statement of material facts describing the specific content of the Post Orders in place for the BOP and the F-2 Unit in particular at the time of the assault and a sealed, unredacted version of these facts which describes more particularly the content of the Post Orders. The Court has reviewed both of these filings. It is sufficient for purposes of summary judgment to state that the Post Orders set out procedures for allowing out-of-cell recreation and officer supervision of this recreation. The officers have discretion to decide

how and when they performs these various tasks and how to remain visible while doing so. While the Post Orders require "direct supervision," this does not require the officers to be physically present in the common area while inmates are engaging in activities outside of their cells. Further, while officers are required to "remain visible," this does not require the officer to be physically present in the common area at all times.

Although the Specific Post Orders provide specific times for specific events, they are only general guidelines that state the duties that officers are expected to perform during their shifts with suggested times. Due to the fluctuating circumstances surrounding the daily operation of a prison, the duties and activities cannot be performed at exactly the same time each day. The times are approximate, and officers may use their discretion and judgment in implementing the Post Orders. Officers assigned to the post are expected to use their initiative and good judgment in all situations.

In short, decisions regarding how to supervise and monitor inmates and when and how to conduct periodic checks of the F-2 Unit are within the discretion of the officers and involve consideration of several factors, including safety and security concerns, staff resources and allocation, and the particular circumstances of each day.

### III. Discussion

The United States argues that it is entitled to summary judgment on Pronin's claims because the claims are barred by the discretionary function exception to the FTCA. The United States further argues that there is no evidence of negligence on the part of the correctional officers.

A. *Discretionary Function Exception*

The FTCA is a limited waiver of the United States' sovereign immunity. *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012) (citing *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484 (2006)). In it, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees in certain circumstances, subject to various exceptions. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). One such exception is the discretionary function exception, which maintains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *See* 28 U.S.C. § 2680(a). The discretionary function exception is an affirmative defense to liability under the FTCA that the government must plead and prove. *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014) (citing *Parrott v. United States,* 536 F.3d 629, 634–35 (7th Cir. 2008); *Reynolds v. United States,* 549 F.3d 1108, 1112 (7th Cir. 2008); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir. 1952); *S.R.P. ex rel. Abunabba v. United States,* 676 F.3d 329, 333 n. 2 (3d Cir. 2012) (collecting cases from other circuits)). To support summary judgment under the exception, the government must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception. *Id.*

The discretionary function exception has two elements. *Calderon v. United States*, 123 F.3d 947, 949 (7th Cir. 1997). "First, a discretionary act must be involved. In other words, the act for which liability is sought to be imposed must involve 'an element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). In addition, "'even assuming the

7

challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322). "[T]he exception protects only governmental actions and decisions based on considerations of public policy." *Id.*

The United States argues that the discretionary function exception shields it from liability both on Pronin's claim that Rogers and Mitchell failed to respond to his report of a threat to his safety and his claim that officers failed to intervene when the assault took place.

### 1. Failure to Respond to Threat

The United States first argues that the discretionary function exception applies to Pronin's claim that Rogers and Mitchell failed to take any particular action in response to Pronin's report of a threat to him by inmate Cossette.

With respect to the first element of the discretionary function exception, the United States points out that there is no mandatory statute, policy, procedure, or regulation that must be followed in responding to reported threats by inmates. Rather, pursuant to BOP policy, correctional staff may use their discretion and judgment in responding to reports of potential threats by inmates, considering such factors as safety and security concerns, the nature of the reported threat, and the specificity of the reported threat. The United States has thus shown the first element of the discretionary function exception.

The United States, however, has not shown the second element of the discretionary function exception. The United States compares Pronin's claims to those in *Calderon v. United States*, 123 F.3d 947 (7th Cir. 1997). In that case, Faustino Calderon reported to BOP personnel that another inmate had threatened him. *Id.* at 948. Prison personnel took no steps to protect him

and the other inmate later assaulted him. *Id.* Calderon sued under the FTCA and the United States moved to dismiss Calderon's complaint based on the discretionary function exception. The district court granted the motion to dismiss and the Seventh Circuit affirmed. The court reasoned that because there was no mandatory, non-discretionary disciplinary action that prison personnel were required to take against the inmate who threatened Calderon, any action on the part of prison personnel was purely discretionary. *Id.* at 950. The court went on to explain that Calderon did not present any facts which would support a finding that the BOP's action not to take disciplinary action against the inmate who threatened him was based on grounds other than considerations of public policy. *Id*. The court stated: "It is clear that balancing the need to provide inmate security with the rights of inmates to circulate and socialize within the prison involves considerations based upon public policy." *Id.* at 951 (citing *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)).

In *Calderon*, the Court presumed, based on the complaint and the arguments before it, that the decision not to act on the alleged threats to Calderon was the result of the exercise of judgment on the part of the prison officials. The Seventh Circuit later clarified this holding, in another case involving injuries an inmate received at the hands of another in prison, reasoning that if the record does not support a presumption that the officials exercised judgment, then the United States has not shown the applicability of the discretionary function exception. *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003). The Court explained:

> Unstated but implicit in *Calderon* is the assumption that prison officials in that case had taken note of the threats against the plaintiff in that case and weighed the relevant considerations in deciding how best to act (or not) in response to those threats. There is no hint, for example, that prison officials simply ignored the reported threats, or forgot about them.

9

The Court also held: "Although *Calderon* makes clear that prison officials enjoy discretion in matters of inmate safety, we do not know at this juncture whether the actions (or inaction) leading up to the altercation in which [the inmate] was injured involved judgment." *Id.* at 431; *see also Keller*, 771 F.3d at 1024 ("[I]f prison officials behaved negligently without making a discretionary judgment of the type shielded by the exception, the discretionary function exception would not apply to their conduct.").

Here, the evidence in the light most favorable to Pronin is that Pronin notified Rogers and Mitchell about the threat by Cossette, but neither took any action. The United States argues that because there is no mandatory policy requiring any particular action by the BOP when informed of an alleged threat to an inmate, the United States is shielded from liability by the discretionary function exception. But, as explained in *Palay*, this exception requires more than a finding that there is no mandatory policy on the alleged conduct. It also requires a conclusion that the officials actually exercised some discretion. *See Palay*, 349 F.3d at 432. As the *Palay* court explained, in *Calderon* there was "no hint . . . that prison officials simply ignored the reported threats, or forgot about them." *Id.* Here, there is such a hint. Pronin states that he told Rogers and Mitchell about the threats and Rogers and Mitchell state they do not remember this. Based on this evidence, the Court cannot conclude that Rogers and Mitchell actually exercised any judgment rather than simply ignored or forgot about the threat. The United States is therefore not entitled to summary judgment on Pronin's claim of negligence for failure to respond to the threat against him based on the discretionary function exception.

2. <u>Failure to Intervene</u>

The United States also argues that the discretionary function applies to Pronin's allegation that correctional officers acted negligently by failing to properly supervise inmates during the assault.

As with Pronin's claim regarding his report of the treat against him, the United States argues that there is no mandatory policy in place regarding specifically when and how to supervise inmates, including when to conduct tours of the unit. The United States concludes that any decision regarding inmate supervision is therefore purely discretionary and protected by the discretionary function exception to the FTCA.

Again, by showing that the policies regarding inmate supervision are not mandatory, the United States has shown the first element of the discretionary function exception, but the United States has not shown second element. In the *Palay* case, discussed above, which involved a claim of negligent inmate supervision, the Seventh Circuit identified situations in which this second factor may not be met:

> Perhaps the corrections officer monitoring the holdover unit at the time that the gang altercation broke out was simply asleep, for example. Or perhaps he left the unit unattended in order to enjoy a cigarette or a snack. That type of carelessness would not be covered by the discretionary function exception, as it involves no element of choice or judgment grounded in public policy considerations.

*Palay*, 349 F.3d at 432. Pronin's contention here, which must be assumed to be true for purposes of summary judgment, is that correctional officers were in their office "drinking tea" at the time of the assault. This falls squarely into the category of careless behavior described above that involves no element of judgment and to which the discretionary function exception does not

11

apply. The United States is thus not entitled to summary judgment based on the discretionary function exception on Pronin's claim that officers failed to intervene in the assault on him.

>B. *Negligence Claims*

The United States next argues that even if the discretionary function exception does not apply to Pronin's claims, his claims fail on their merits.

Under the FTCA, a negligence claim against the United States is governed by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because the actions Pronin complains of occurred in Indiana, Indiana law applies. *See id.* To prove negligence under Indiana law, a plaintiff must establish (1) a duty owed to the plaintiff by defendant; (2) a breach of that duty by the defendant; and (3) that the breach proximately caused the plaintiff's damages. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010).

>1. Failure to Respond to the Threat

The United States first argues that Pronin has not met the elements of an Indiana negligence claim with regard to his report that inmate Cossette threatened him. The United States does not argue that it did not have a duty to keep Pronin safe from assault. Nor could it. 18 U.S.C. § 4042(a)(2) requires the BOP to provide for the "safekeeping, care, and subsistence." Citing *Calderon*, however, the United States argues that "inmates often seek to mislead prison officials about perceived threats by other inmates for various reasons, including the chance to change cell locations." According to the United States, if Pronin "truly believed his safety was at risk, he could have requested protective custody or to be placed in the SHU." This is understood to be an argument that the United States breached no duty to Pronin either because: (1) he might have been lying about the threat; or (2) he did not request protective custody.

12

Neither of these arguments suffices to show as a matter of law that the United States did not breach its duty to Pronin. The evidence presently before the Court viewed favorably to Pronin is that Pronin reported the threat to Rogers and Mitchell and they did nothing. There is no evidence that they reported it to their supervisor or otherwise investigated it. In fact, each has testified that he does not remember Pronin reporting this threat and that if a threat were reported he would have informed the Lieutenant and, if needed, escorted Pronin to the Lieutenant's Office for interview and a possible protective custody investigation. While officers can exercise judgment regarding whether an inmate is being truthful or manipulative when reporting a threat, there is no evidence that Rogers and Mitchell exercised any judgment or did anything at all regarding Pronin's report. Based on the evidence that Pronin reported a threat, that Rogers and Mitchell normally would investigate a threat, and that Rogers and Mitchell did not investigate or otherwise act on the threat, a reasonable trier of fact could conclude that Rogers and Mitchell did not act reasonably under the circumstances.[1]

In short, the United States has not shown its entitlement to summary judgment on Pronin's negligence claim regarding his report of a threat to Rogers and Mitchell. A reasonable trier of fact could conclude based on the facts described above that the United States breached a duty to Pronin to ensure his safety and that this breach caused his injuries.

---

[1] The United States also argues that Pronin could have asked for protective custody or to be placed in the SHU, but did not. But evidence that Pronin did not request protective custody is not material to whether or not Rogers and Mitchell acted negligently. Further, it is inconsistent with other evidence presented by the United States that determinations regarding an inmate's placement are not within the power of the inmate to make, but are within the discretion of the Warden.

### 2. Failure to Intervene

The United States also argues that Pronin has not met the elements of a negligence claim with regard to his claim that officers were "drinking tea" in their office at the time of the assault. The United States points out that the Post Orders governing correctional officers' supervision of a prison unit do not dictate specific actions that officers are supposed to take and do not require officers to be present in the common area of the unit while inmates are engaging in activities outside of their cells. The United States also asserts that the large glass window in the office allowed officers to observe inmates in the common area of the unit. Because there is no evidence that any officer on duty at the time of the assault directly violated Post Orders, the United States concludes that the officers did not breach any duty of care to Pronin. But the evidence before the Court could support a conclusion that officers did breach a duty to Pronin. The evidence presented by Pronin is that officers were in their office "drinking tea" at the time of the assault. This is evidence that, if believed, could lead a reasonable trier of fact to conclude that officers were not observing inmates in the common area as they should have been, but were neglecting their duties at the time of the assault.[2] The United States is thus not entitled to summary judgment on Pronin's claim that officers negligently failed to intervene when he was assaulted.

---

[2] The United States also emphasizes that the attack took seven seconds, implying that any failure to observe the inmates for this short period of time could not possibly have been the result of negligence. The Court notes that, according to the United States, the attack took place at 1:39 p.m., but Pronin did not approach the office until 1:50 p.m. Thus, eleven minutes passed, during which time Pronin was attacked and officers did not respond. This is a much longer period of time than the seven seconds of the assault. This length of time during which there was no action taken on the part of the officers could raise an inference to a reasonable trier of fact that the officers acted negligently.

## IV. Conclusion

For the foregoing reasons, the United States is not entitled to sovereign immunity based on the discretionary function exception to the FTCA and is not entitled to judgment as a matter of law on the merits of Pronin's negligence claims. The United States' motion for summary judgment [dkt 77] is therefore **denied**.

The Court will endeavor to recruit volunteer counsel to represent Pronin for settlement and trial and will issue further proceedings in this case through a separate order. If Pronin objects to the recruitment of counsel, he should notify the Court within **ten days** of this Entry.

**IT IS SO ORDERED.**

Date: 3/16/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DMITRY PRONIN
06763-015
FLORENCE - HIGH USP
FLORENCE HIGH U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 7000
FLORENCE, CO 81226

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE
Gina.Shields@usdoj.gov